NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MELLCELL, LLC, *Plaintiff/Appellee,*

*v.*

LINDA ALLEN, et al., *Defendants/Appellants.*

No. 1 CA-CV 20-0530
FILED 5-17-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-014220
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Messner Reeves, LLP, Phoenix
By David A. Selden, Julie A. Pace, Daniel L. Marks
*Counsel for Plaintiff/Appellee*

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Brian Y. Furuya joined.

---

**P E R K I N S**, Judge:

¶1            Linda Allen and Michael Judy (collectively "Defendants") appeal the superior court's ruling that confirmed an arbitration award in favor of Preferred Spectrum Investments, LLC ("Preferred Investments"). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2            Preferred Investments formed in 2009 to provide telecommunications services and to fund a lawsuit against Preferred Spectrum Communications, Inc. ("Preferred Communications"). Through its operating agreement, Preferred Investments established a five-member management committee ("Committee") to conduct the corporation's affairs. Judy served as the Committee's president from July 2009 to August 2014, and Allen served as treasurer from May 2010 to August 2014. Section 7.20 of the operating agreement enabled Committee members to receive "reasonable compensation" for their services but only by agreements "approved by a concurrent Majority-In-Interest vote of the Members."

¶3            In September 2011, the Committee reduced its managers' monthly salaries from $3,500 to $1,500. But the Committee voted to continue paying Judy $5,000 per month, and Allen $3,500 per month. Three months later, the Committee suspended all monthly salary payments "until funds [became] available," except for Judy, who continued to receive $5,000 per month.

¶4            In July 2014, the Committee's secretary, Carole Downs, wrote to all Preferred Investments members and identified a conflict of interest from all managers owning investment interests in Preferred Communications, which remained in litigation with Preferred Investments. Downs recommended the Committee add two to three new managers who held no investment in Preferred Communications to facilitate negotiations between the two companies. Downs then called an annual meeting of Preferred Investments' members to elect new managers to the Committee.

**¶5** On August 6, 2014, the Committee met and approved payment of its managers' salaries from December 2011 through December 2012. The Committee also approved withholding manager salaries owed from January 2013 through August 6, 2014, except Allen's. On or after August 7, 2014, Preferred Investments started issuing checks to managers. Judy received $10,000, and Allen received $119,000. Downs returned her $45,000 check because Section 7.20 of the operating agreement required a majority of all shareholders to approve the Committee Members' "reasonable compensation."

**¶6** Preferred Investments members elected four new managers to the Committee in late August or early September 2014 and re-elected Downs. Neither Allen nor Judy sought re-election. The Committee then sought repayment of salaries paid pursuant to the August 6, 2014 meeting. All former managers, except Defendants, settled with Preferred Investments. Defendants refused to settle or repay the money they received.

**¶7** Thereafter, Preferred Investments initiated arbitration, claiming breach of contract, breach of fiduciary duty, breach of the duty of care, breach of the duty of loyalty, and unjust enrichment. Defendants asserted counterclaims for breach of contract, fraudulent concealment, and negligent misrepresentation.

**¶8** The arbitrator issued a final award ("Award") on August 26, 2019, concluding Defendants breached Section 7.20 of the operating agreement by compensating themselves without the requisite membership approval. The Award required Judy to repay $10,000, and Allen $119,000, to Preferred Investments and held Defendants jointly and severally liable for $170,425.83 in arbitration fees and costs.

**¶9** In October 2019, Preferred Investments applied to confirm the Award in superior court. Defendants asked the court to dismiss the application, vacate the Award, and set the matter for rehearing. Defendants argued: (1) Preferred Investments obtained the Award through fraud and other undue means; (2) the lengthy arbitration process violated "settled principles of arbitration efficiency;" and (3) the arbitrator improperly disregarded Delaware law.

**¶10** The superior court confirmed the Award and ordered Defendants to pay Preferred Investments' attorneys' fees and costs. The court found, "the alleged fraud does not withstand scrutiny as a basis to vacate the award." Rejecting Defendants' other arguments, the court found

the length of the arbitration proceedings provided no valid basis to vacate the Award, and the arbitrator did not ignore Delaware law.

¶11 Defendants timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1). During the pendency of this appeal, Preferred Investments filed for bankruptcy. MellCell, LLC ("MellCell") bought Preferred Investments' assets, which included the Award and associated judgment, and is now the real party in interest.

## DISCUSSION

¶12 The legislature has substantially limited judicial review of an arbitration award because of the state's interest in supporting speedy and inexpensive dispositions of disputes. *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13 (App. 2012). Defendants bear the burden of proving the existence of any asserted statutory ground to vacate the Award. *See Fisher v. USAA Cas. Ins. Co.*, 245 Ariz. 270, 272, ¶ 9 (App. 2018). We review the confirmation of the Award for an abuse of discretion. *See id.*

¶13 Arizona's Revised Uniform Arbitration Act (the "Act") governs all arbitration agreements in the state. A.R.S. § 12-3003(A)(3). Defendants essentially raise two statutory arguments: Preferred Investments obtained the Award by fraud, § 12-3023(A)(1), and the arbitrator exceeded his powers, § 12-3023(A)(4).

¶14 "A court may refuse to confirm an arbitration award because of undue means only when the undue means are (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Nolan v. Kenner*, 226 Ariz. 459, 462, ¶ 7 (App. 2011) (cleaned up).

¶15 Defendants contend that Downs withheld necessary information, namely her involvement in financial dealings with Preferred Investments and Preferred Communications, and this information would have revealed Downs acted out of self-interest—and not as a whistleblower—when she reported her concerns about manager compensation. But Downs's alleged motivation was not materially related to the issue in arbitration: whether the Committee violated Section 7.20 of the operating agreement when its members paid themselves without first receiving majority shareholder approval. The superior court thus correctly determined Defendants failed to establish Preferred Investments obtained the Award by fraud.

**¶16** Defendants' other statutory ground for objecting to the Award is that the arbitrator exceeded his authority by "refusing to apply Delaware law" on the applicable statute of limitations and in interpreting the contract. But the record establishes that the arbitrator explicitly applied Delaware law. Defendants merely disagree with his conclusions. Judicial review is not available on this basis. *See Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180 (App. 1974) (within the boundaries of the parties' agreement, "the arbitrators' decision is final both as to questions of fact and law").

**¶17** The superior court did not abuse its discretion when it confirmed the Award.

**¶18** MellCell requests attorneys' fees and costs on appeal under the operating agreement, and A.R.S. §§ 12-349, 12-2106, and 12-3025. MellCell also requests attorneys' fees and costs incurred while preparing a response to Defendants' motion to supplement the record. Section 12.5 of the operating agreement explicitly authorizes recovery of "reasonable attorneys' fees and court and other costs." MellCell, as the prevailing party, is entitled to its reasonable attorneys' fees and costs on appeal, upon compliance with ARCAP 21. Its recoverable fees and costs include responding to Defendants' motion to supplement the record.

## CONCLUSION

**¶19** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

5